UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CORTLANDT STREET RECOVERY CORP.,                            :
                                              Plaintiff,    :    12 Civ. 9351 (JPO)
                                                            :
            -against-                                       :    OPINION AND ORDER
                                                            :
DEUTSCHE BANK AG, LONDON BRANCH,                            :
                                             Defendant.     :
                                                            :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      This is an action brought by Cortlandt Street Recovery Corp. ("Cortlandt") against Deutsche Bank AG, London Branch ("Deutsche Bank"), concerning Subordinated Notes issued by Hellas Telecommunications II, S.C.A. that are currently in default. Deutsche Bank has moved to dismiss the action, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons set forth below, the Court lacks jurisdiction over this case, and therefore dismisses it without prejudice.

      "The district courts of the United States . . . are 'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994)). Article III, Section 2 of the Constitution provides that federal courts may decide "Cases" or "Controversies." "One essential aspect of this requirement is that

---

[1] Deutsche Bank purports to move solely under Rule 12(b)(6), but because Deutsche Bank argues that the Court lacks subject matter jurisdiction, the motion is construed as being brought under Rule 12(b)(1) as well. Where a defendant moves to dismiss an action for lack of subject matter jurisdiction as well as for failure to state a claim, the former must be considered first. *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (citation omitted).

any person invoking the power of a federal court must demonstrate standing to do so. This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S.Ct. 2652 (2013) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992)).

The burden of establishing standing falls squarely on "[t]he party invoking jurisdiction." *Lujan*, 504 U.S. at 561; *see also Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 0722 (PAE), 2012 WL 4849146, at *2 (S.D.N.Y. Oct. 12, 2012) ("Once subject matter jurisdiction is challenged, '[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that jurisdiction exists.'" (quoting *Giammatteo v. Newton,* 452 F. App'x 24, 27 (2d Cir. 2011))). That burden, however, is different at different stages of a litigation. *See Lujan*, 504 U.S. at 561. At the motion to dismiss stage, Plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (citations omitted); *see also Warth v. Seldin* 422 U.S. 490, 501-02 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."); *accord Perez v. Nidek Co., Ltd.*, 711 F.3d 1109, 1113 (9th Cir. 2013) ("A look at those allegations reveals virtually nothing because they are no more than conclusory and bare bones words and phrases without any factual content. Such vacuous claims are insufficient to establish standing or to survive a motion to dismiss.").

Although "[a]s a general rule, the 'injury-in-fact' requirement means that a plaintiff must have personally suffered an injury . . . [c]ourts may permit a party with standing to assign its claims to a third party, who will stand in the place of the injured party and satisfy the

2

constitutional requirement of an 'injury-in-fact.'" *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 107 (2d Cir. 2008) (citations omitted). While assignment of a claim need not come in "a particular form," an assignment will satisfy Article III's standing requirements *only* if "the language [of the assignment] manifests [the previous owner's] intention to transfer *at least title or ownership*, *i.e.,* to accomplish a completed transfer of *the entire interest* of the assignor in the particular subject of assignment." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17 (2d Cir. 1997) (citations omitted) (emphasis added); *see also W.R. Huff*, 549 F.3d at 108 ("In our view, *Sprint* makes clear that the *minimum* requirement for an injury-in-fact is that the plaintiff have *legal title* to, or a proprietary interest in, the claim." (citing *Sprint Comm'c Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008)).[2] The grant of a power of attorney, *i.e.*, where "one person grants another the power to sue on and collect on a claim . . . , is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Advanced Magnetics, Inc.*, 106 F.3d at 17-18 (citing *Titus v. Wallick*, 306 U.S. 282, 289 (1939)); *see also W.R. Huff*, 549 F.3d at 108 (reaffirming the distinction between a grant of power of attorney and assignment of title to a claim).

For example, in *Titus*, the relevant agreement sufficiently assigned a claim by conveying "'all [the owner's] right, title and interest' in the claim." 306 U.S. at 286; *accord Sprint*, 554 U.S. at 272 (plaintiff has standing where agreement "assigns, transfers and sets to [the aggregator] for purposes of collection all rights, title and interest of the [payphone operator] in the [payphone operator's] claims"); *Clarex Ltd.*, 2012 WL 4849146, at *6 (finding a "complete and equivocal assignment of the claims" where a contract "grants, assigns, conveys, transfers,

---

[2] An assignee may have standing where it has title to the claim, notwithstanding the fact that it "planned to remit the litigation proceeds to the assignors." *Id*. (citing *Sprint*, 554 U.S. at 287).

3

and sets over, unto the assignee, its successors and assigns any and all claims which it now holds"). By contrast, in *Advance Magnetics, Inc.*, the agreement, which stated that "the assignors do hereby assign . . . the power to commence and prosecute to final consummation or compromise any suits, actions or proceedings," was insufficient to confer standing, because it did not "purport to transfer title or ownership to [the plaintiff]." 106 F.3d at 14, 18. Likewise, in *W.R. Huff*, the Second Circuit held that a plaintiff that was "'empowered by powers of attorney' to bring a lawsuit 'in a representative capacity'" lacked standing. 549 F.3d at 109.

In its Complaint, Cortlandt alleges "that it is the assignee of the owners of Subordinated Notes . . ." and elsewhere "that is assignee from owners of Subordinated Notes with the right to collect €83,120,000." (Dkt. No. 1 ("Compl."), at ¶¶ 1, 6.) These are the sole allegations concerning the nature of the assignment. They are plainly insufficient to demonstrate standing. Nowhere does the Complaint allege that *title* to or *ownership* of the *claims* has been assigned to Cortlandt. And indeed, the Complaint does not even allege *what* was assigned from the Note owners to Cortlandt. Plainly, the fact that the owner of the Notes assigned *something* to Cortlandt is insufficient to confer standing. *See Advanced Magnetics, Inc.*, 106 F.3d at 14, 17-18 (agreement insufficient to confer standing, despite the fact that it purports to be an "assignment").

Nor has Cortlandt submitted any additional evidence suggesting that it has legal title to the claims at issue. In opposition to Deutsche Bank's motion, Cortlandt relies on an "Assignment of Collections Rights" between itself and holders of "Floating Rate Senior PIK Notes Due 2015" ("the PIK Notes Assignment"). (Dkt. No. 12 ("Tisne Decl."), Ex. E; *see also* Dkt. No. 18 ("Pl.'s Opp'n."), at 6.). The PIK Notes Assignment provides in relevant part:

> The Noteholder hereby assigns to [Cortlandt] full rights to collect
> amounts of principal and interest due on the Notes, and to pursue
> all remedies with respect to the Notes . . . any [] person or entity

4

> who may be liable to Noteholder. The Noteholder remains the owner of the Notes and person in whose name the Notes are registered.
>
> The Noteholder hereby irrevocably appoints [Cortlandt] its true and lawful attorney and proxy, with full power of substitution, to pursue collection and all remedies with respect to the Notes, either in the name of the Noteholder or in the name of [Cortlandt]. . . .
>
> I understand that, as consideration for the assignment of my collection rights arising under the Notes to [Cortlandt], my appointment of [Cortlandt] as proxy, and for such other compensation terms which are documented separately, [Cortlandt] will assume responsibility for retaining counsel to pursue my rights under the Notes. . . .

First, the notes at issue in the PIK Notes Assignment are *not* the notes at issue in this case. Indeed, Cortlandt conceded this during a telephone conference with the Court. (Transcript of Telephone Conference, dated June 12, 2013 ("Trans."), at 2:23-24 ("[T]hey are a different tranche of notes . . . ."); *id.* at 3:12). The PIK Notes Assignment, standing alone, cannot possibly demonstrate that Cortlandt has been assigned title to claims under the Subordinated Notes at issue in this case.

Second, even if the notes at issue in the PIK Notes Assignment were the same as those at issue here – which they are not – that document does not appear to convey title to the claims to Cortlandt. Nowhere in the PIK Notes Assignment does it state, or clearly suggest, that *ownership of* or *title to* the claims has been assigned. Rather, the PIK Notes Assignment assigns "full rights to collect" on any possible claims, and "to pursue all remedies with respect to the Notes." *See Advanced Magnetics*, 106 F.3d at 17 ("A provision by which one person grants another the power to sue on and collect on a claim confers on the grantee a power of attorney with respect to that claim," which "is not equivalent to an assignment of ownership . . . ."). Elsewhere, the PIK Notes Assignment provides that Cortlandt will "pursue [the assignor's] rights under the Notes," which again suggests that Cortlandt is merely authorized to collect on behalf of

the Noteholder.  Cortlandt has failed to carry its burden of demonstrating that it has not only a power of attorney, but also ownership in the claims themselves.

In short, neither the Complaint, nor the extrinsic evidence provided to the Court, adequately suggests that Cortlandt owns the claims at issue by virtue of an assignment.[3] Cortlandt therefore has failed to demonstrate standing to bring this action.

During a recent telephone conference, Cortlandt suggested that, were the Court to hold that Cortlandt lacked standing, it should be permitted to cure the deficiency by "interven[ing] the real party . . . or establish[ing] authorization" through a new agreement.  (Trans. at 5:16-18; *see also id.* at 5:18-22 (Plaintiff's Counsel: "If [Defense Counsel] is questioning whether the authorization is sufficient, rather than to say that this is sufficient where he says it isn't, he is just giving me language that he wants to see, why don't I just go out and get it?")).  Standing, however, "is to be determined as of the commencement of suit." *Lujan,* 504 U.S. at 570 n. 5.  A court may not permit an action to continue, even where the jurisdictional deficiencies have been subsequently cured, "if jurisdiction [was] lacking at the commencement of a suit . . . ." *Disability Advocates, Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.,* 675 F.3d 149, 160 (2d Cir. 2012) (internal quotation marks and alterations in original omitted); *see also In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112 (S.D.N.Y. 2009) ("[A]n assignment of legal rights which takes place after the commencement of litigation does not abdicate the constitutional requirement that standing must exist from the commencement of litigation." (citing *Berger v. Weinstein*, No. 07

---

[3] Even where a plaintiff has failed to demonstrate an injury-in-fact, it may have standing if it "qualifies for a prudential exception to the injury-in-fact requirement . . . ." *W.R. Huff*, 549 F.3d at 109.  As the Second Circuit explained in *W.R. Huff*, the prudential exceptions "permit third-party standing where the plaintiff can demonstrate (1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interest." *Id.* (citing cases); *see also In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 575-77 (discussing *W.R. Huff*'s analysis of the prudential exceptions to standing at length).  Cortlandt has provided the Court with no reason to believe that a prudential exception to the standing requirement exists in this case.

Civ. 994, 2008 WL 3183404, at *3 n.4 (E.D. Pa. Aug. 6, 2008))); *Clarex Ltd.*, 2012 WL 4849146, at *8 ("[W]here courts in this Circuit have used of Rule 17(a)(3) to remedy defects in standing, they have generally done so where the plaintiff clearly had standing on another claim that it brought." (citing cases)).[4]

For the foregoing reasons, Deutsche Bank's motion to dismiss is GRANTED. This action is dismissed without prejudice.

The Clerk of the Court is directed to terminate the motion at docket number 11 and to close the case.

SO ORDERED.

Dated: New York, New York
       July 18, 2013

_____
J. PAUL OETKEN
United States District Judge

---

[4] Rule 17(a)(3) provides:

> *Joinder of the Real Party in Interest.* The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). Again, however, "unlike in those cases [where Rule 17(a)(3) has been used to cure standing deficiencies]," Plaintiff "here [did not have] Article III standing on *any* of [its] claims as of the date the original Complaint was filed." *Clarex Ltd.*, 2012 WL 4849146, at *7 (emphasis in original); *see also Lincoln Prop. Co. v. Roche,* 546 U.S. 81, 90 (2005) (explaining that Rule 17(a) "address[es] party joinder, not federal-court subject-matter jurisdiction").